UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIFFINY J. BOLLA,

              Plaintiff,                CIVIL ACTION NO. 11-11008

        v.                         DISTRICT JUDGE GEORGE CARAM STEEH

COMMISSIONER OF               MAGISTRATE JUDGE MARK A. RANDON
SOCIAL SECURITY,

              Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

## I.    PROCEDURAL HISTORY

###     A.    *Proceedings in this Court*

On March 14, 2011, Plaintiff filed suit seeking judicial review of the Commissioner's

decision disallowing benefits (Dkt. No. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule

72.1(b)(3), this matter was referred to the undersigned for the purpose of reviewing the

Commissioner's decision denying Plaintiff's claim for a period of disability, Disability Insurance

(DIB) and Supplemental Security Income (SSI) benefits (Dkt. No. 3).  This matter is currently

before the Court on cross-motions for summary judgment (Dkt. Nos. 11, 14).

###     B.    *Administrative Proceedings*

Plaintiff filed the instant claims on February 25, 2005 (DIB), and October 27, 2005 (SSI),

alleging that she became unable to work on July 14, 2003 (Tr. 28, 503, 500-502).  The claims

were initially disapproved by the Commissioner on February 23, 2006 (Tr. 504-507).  Plaintiff

requested a hearing and, on August 6, 2008, Plaintiff appeared with counsel before

Administrative Law Judge (ALJ) James P. Alderisio, who considered the case *de novo*.  In a decision dated February 4, 2009, the ALJ found that Plaintiff was not disabled (Tr. 25-36).  Plaintiff requested a review of this decision on February 17, 2009 (Tr. 23-24).  The ALJ's decision became the final decision of the Commissioner on January 14, 2011 when, after the review of additional exhibits (AC-1-AC-4, Tr. 508-738), the Appeals Council denied Plaintiff's request for review (Tr. 5-8).

For the reasons set forth below, this Court finds that the ALJ's decision is this matter contains errors of law.  Specifically, the ALJ's decision is flawed because it did not adequately consider whether Plaintiff met or medically equaled a listed impairment at step three of  process.  Accordingly, this Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment be **GRANTED**, that Defendant's Motion for Summary Judgment be **DENIED**, and that, pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner be **REMANDED** for a new hearing consistent with the discussion below.

## II.   STATEMENT OF FACTS

### A.   *ALJ Findings*

Plaintiff was 27 years old on her alleged disability onset date (Tr. 35).  Plaintiff has past relevant work as a medical assistant (Tr. 35).  The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since July 14, 2003 (Tr. 30).  At step two, the ALJ found that Plaintiff had the following "severe" impairments: multiple sclerosis and depression.  *Id*.  At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations (Tr. 31).  Between steps three and four, the ALJ found that Plaintiff had the Residual Functional Capacity (RFC) to perform "light work...except no ladders, ropes or scaffolds; only

occasional ramps or stairs; [Plaintiff] may engage in frequent stooping kneeling crouching and crawling; no exposure to hazardous machines; she should perform simple one or two step instruction jobs with low stress; [Plaintiff] has limited but satisfactory ability to deal with and maintain her attention and concentration but she is severely limited but not precluded in handling detailed instructions" (Tr. 32). At step four, the ALJ found that Plaintiff could not perform her previous work as a medical assistant (Tr. 35). At step five, the ALJ denied Plaintiff benefits, because the ALJ found that Plaintiff could perform a significant number of jobs available in the national economy, such as a housekeeper/cleaner (9,200 jobs in Southeastern Michigan and 312,000 in the national economy) or general office clerk/office helper (4,900 jobs in Southern Michigan and 165,000 jobs in the national economy) (Tr. 36).

### B.   Administrative Record

#### 1.   Plaintiff's Testimony and Statements

On August 6, 2008, Plaintiff appeared with counsel and testified at a hearing before the ALJ (Tr. 739, 745-53). Plaintiff testified that she had nose bleeds and was getting depressed because she could not support herself and her son (Tr. 745-46). She completed three years of college in a nursing program, but did not finish because she could not "handle the stress of the job with the patient load" (Tr. 747). Plaintiff claimed she had vertigo because of her blood pressure (Tr. 748). She stated she had optic neurosis, which had resolved (Tr. 749). She could read an eye chart and a book (Tr. 749). Plaintiff testified to having difficulty staying awake; she needed to take a nap in the afternoons, and there were some days when she could not get up at all (Tr. 750).

2.      **Medical Evidence**

As discussed in greater detail below, Plaintiff raises two very specific challenges to the ALJ's findings, primarily in relation to the ALJ's assessment of Plaintiff's multiple sclerosis (MS)[1].  Defendant's motion for summary judgment accurately summarized the medical records concerning Plaintiff's MS as follows:

An MRI study of Plaintiff's head was performed on May 15, 2000 and showed periventicular deep white matter abnormal foci seen bilaterally which may represent a demyelinating process such as MS (Tr. 151).

On April 10, 2004, Plaintiff had another MRI of her brain and brainstem, which showed a few foci of abnormal hyperintense signal on T2 and FLAIR weighted images within the periventricular deep white matter bilaterally, a couple of which were elongated perpendicularly to the lateral ventricles (Tr. 407).  The number, size and distribution of the foci of signal were unchanged when compared to a prior study of December 23, 2002 (Tr. 407).  None of the foci demonstrated abnormal contrast enhancement (Tr. 407). The findings were compatible with demyelinating plaques which were stable (Tr. 407).

On November 3, 2004, Howard S. Rossman, D.O., wrote a letter to Dr. Delara, which stated that, when comparing the MRI taken on May 16, 2000 to the MRI taken in April 2004, "[t]here was no significant change from the previous imaging done back in 2000" (Tr. 101).  Plaintiff's mental status exam was normal (Tr. 101).  Motor examination revealed normal gait

---

[1]   "Multiple sclerosis (MS) is a potentially debilitating disease in which [the] body's immune system eats away at the protective sheath that covers [its] nerves. This interferes with the communication between [the] brain and the rest of [the] body. Ultimately, this may result in deterioration of the nerves themselves, a process that's not reversible." http://www.mayoclinic.com/health/multiple-sclerosis/DS00188.  Multiple sclerosis symptoms may include:  numbness or weakness in one or more limbs, which typically occurs on one side of the body at a time or the bottom half of the body, loss of vision or blurring of vision, lack of coordination or unsteady gait, fatigue, and dizziness.  *Id.*

and station (Tr. 102). She had good muscle strength and tone in all extremities (Tr. 102). Plaintiff's sensory and cerebellar examinations were normal (Tr. 102).

On January 3, 2006, a state agency reviewing physician, Byong-Du Choi, M.D., completed a physical residual functional capacity (RFC) assessment and found that Plaintiff could perform a range of light work (Tr. 166-72). Specifically, Dr. Choi found that Plaintiff could lift and/or carry and push and/or pull 20 pounds occasionally and 10 pounds frequently, stand and/or walk six hours, and sit six hours in an eight-hour workday (Tr. 166). Dr. Choi found that Plaintiff could occasionally climb and frequently balance, stoop, kneel, crouch and crawl, and that Plaintiff should avoid even moderate exposure to hazards (Tr. 167, 169).

On March 7, 2007, an MRI revealed abnormalities involving perilateral ventricular white matter and pons and confluent involvement in the right optic radiation (Tr. 332). The findings were consistent with multiple demyelinating plaques (Tr. 332).

A year later, on March 11, 2008, Dr. Seidman conducted another MRI of Plaintiff's brain (Tr. 331). This time, Dr. Seidman compared the MRI to the prior one he took on March 7, 2007 (Tr. 331). It was Dr. Seidman's impression that there was no significant interval change since the prior study (Tr. 331).

On April 30, 2008, Dr. Daniel Singer completed an RFC questionnaire (Tr. 415-18). He opined that Plaintiff did not have significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movement of gait and station (Tr. 415). He indicated that Plaintiff had significant reproducible fatigue of motor function with substantial muscle weakness on repetitive activity, demonstrated on physical examination, resulting from neurological dysfunction in areas of the central nervous system known to be pathologically involved by the MS process (Tr. 416). He opined that Plaintiff was

incapable of even low stress jobs (Tr. 416).  He further opined that Plaintiff could carry less than 10 pounds rarely, never crouch and climb, could rarely twist and stoop, and needed to be absent from work more than four days a month (Tr. 418).  He opined that Plaintiff could walk one block, sit 4 hours a day for 45 minutes at a time, stand less than 2 hours a day for 15 minutes at a time, and needed to take two to three unscheduled breaks every hour (Tr. 417).

### 3.    Vocational Expert

A vocational expert (VE) testified at the hearing (Tr. 753-60).  The ALJ asked the VE whether jobs existed for an individual who could do light work with the following restrictions: no climbing ladders, ropes, or scaffolding, occasional climbing of ramps and stairs, frequent stooping, kneeling, crouching and crawling, no exposure to hazardous material or machinery (Tr. 753).  The jobs would be limited to simple one and two step instructions, and involve low stress. The individual would also be limited but satisfactory in dealing with maintaining attention and concentration and severely limited but not precluded in handling detailed instructions (Tr. 753). The VE testified that the individual would be able to perform work as a housekeeper/cleaner (9,200 jobs in Michigan, 312,000 nationally) and a general office clerk/office helper (4,900 jobs in Michigan, 165,000 jobs nationally) (Tr. 753).

### C.    *Plaintiff's Claims of Error*

Plaintiff raises two arguments on appeal: (1) that the ALJ erred at step three by not specifically addressing why Plaintiff failed to meet several listed impairments; and (2) that the ALJ improperly rejected the opinion of Plaintiff's treating physician, Dr. Singer.

III.    **DISCUSSION**

    *A.    Standard of Review*

    In enacting the Social Security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *See Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *See Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court.  *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

    This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may...consider the credibility of a claimant when making a

-7-

determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007)

(the "ALJ's credibility determinations about the claimant are to be given great weight,

particularly since the ALJ is charged with observing the claimant's demeanor and credibility.")

(quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree

is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony,

and other evidence.").  "However, the ALJ is not free to make credibility determinations based

solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486

F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

     If supported by substantial evidence, the Commissioner's findings of fact are conclusive.

42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely

because it disagrees or because "there exists in the record substantial evidence to support a

different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006);

*Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more

than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241;

*Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of

choice' within which the Commissioner may proceed without interference from the courts."

*Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800

F.2d at 545.

     The scope of this Court's review is limited to an examination of the record only.  *See*

*Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing

the Commissioner's factual findings for substantial evidence, a reviewing court must consider

the evidence in the record as a whole, including that evidence which might subtract from its

weight.  *See Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

### B.    Governing Law

The "[c]laimant bears the burden of proving her entitlement to benefits."  *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x. 515, 524 (6th Cir. 2003).  There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq.*).  Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch, *Federal Disability Law and Practice* § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits...physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant

-10-

numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

### C.    Analysis and Conclusions

As noted earlier, Plaintiff raises two arguments on appeal.  Since Plaintiff's first argument is well-taken (necessitating a remand), this Report and Recommendation does not address Plaintiff's second argument.

### 1.    The ALJ Provided An Inadequate Analysis At Step Three

The ALJ erred by not setting forth his reasoning as to why Plaintiff failed to "meet" or "medically equal" additional listed impairments at step three.  Arguably, Plaintiff meets Listing 11.09, which reads:

> **11.09 *Multiple sclerosis*.** With:
>
> A. Disorganization of motor function as described in 11.04B; or
>
> B. Visual or mental impairment as described under the criteria in 2.02, 2.03, 2.04, or 12.02; or
>
> C. Significant, reproducible fatigue of motor function with substantial muscle weakness on repetitive activity, demonstrated on physical examination, resulting from neurological dysfunction in areas of the central nervous system known to be pathologically involved by the multiple sclerosis process.

Here, the Court cannot say with confidence that the same disability outcome would have resulted had the ALJ performed a more rigorous "meets" or "medically equals" analysis at step three. Unquestionably, Plaintiff has multiple sclerosis.  Indeed, the ALJ recognized Plaintiff's multiple sclerosis as a "severe impairment" at step two of the process.  However, the ALJ then completely failed to analyze whether Plaintiff's MS met or medically equaled Listing 11.09.  The ALJ simply stated – in summary fashion – that Plaintiff "has the severe impairments listed above [MS

-11-

& depression], the impairments, or combination of impairments, do not meet or medically equal the specific criteria of 1.00 Musculoskeletal Symptoms, 11.00 Neurological, 12.00 Mental Disorders...." (Tr. 31). The ALJ then went on to specifically consider Listing 12.04 (affective disorders), but did not discuss any other listing in any detail whatsoever. This was error.

When faced with similarly conclusory step three analysis, courts have found that an ALJ's lack of narrative deprives the federal court of its ability to act as an appellate tribunal and instead forces the court to become the finder of fact:

> In this case, the ALJ did not discuss the evidence or his reasons for determining that appellant was not disabled at step three, or even identify the relevant Listing or Listings; he merely stated a summary conclusion that appellant's impairments did not meet or equal any Listed Impairment. . . . Such a bare conclusion is beyond meaningful judicial review. Under the Social Security Act,
>
>> [t]he Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under this subchapter. Any such decision by the Commissioner of Social Security which involves a determination of disability and which is in whole or in part unfavorable to such individual shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based.
>
> 42 U.S.C. 405(b)(1). Under this statute, the ALJ was required to discuss the evidence and explain why he found that appellant was not disabled at step three.
>
> This statutory requirement fits hand in glove with our standard of review. By congressional design, as well as by administrative due process standards, this court should not properly engage in the task of weighing evidence in cases before the Social Security Administration. Rather, we review the Secretary's decision only to determine whether [his] factual findings are supported by substantial evidence and whether [he] applied the correct legal standards.

-12-

*Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996); *see also Miller v. Comm'r of Soc. Sec.*, 181 F. Supp. 2d 816, 820 (S.D. Ohio 2001) (citing *Clifton* with approval and explaining, "[t]he Commissioner argues that the error in this case, if any, was made by plaintiff, who failed to satisfy his Step 3 burden of coming forward with evidence to prove that he was disabled under the Listings. . . . [W]hether or not plaintiff came forward with the requisite evidence at Step 3, the ALJ was required to discuss that evidence, relative to the Listings, as required by *Clifton*.  As noted above, the ALJ failed to do so, thus meriting a sentence four remand."); *Torres v. Comm'r of Soc. Sec.*, 279 Fed. App'x 149, 151-52 (3rd Cir. 2008) ("This court has stated that it is the ALJ's responsibility to identify the relevant listed impairment(s) and develop the arguments both for and against granting benefits" (internal quotation marks, alterations, and citation omitted)); *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003) ("As we have recently noted, failure to discuss or even cite a listing, combined with an otherwise perfunctory analysis, may require a remand."); *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3rd Cir. 2000) ("Because we have no way to review the ALJ's hopelessly inadequate step three ruling, we will vacate and remand the case for a discussion of the evidence and an explanation of reasoning supporting a determination that Burnett's 'severe' impairment does not meet or is not equivalent to a listed impairment."); *Sorenson v. Astrue*, No. 10-C-0582, 2011 WL 1043362, at *9-11, (E.D. Wis. Mar. 18, 2011) (finding that ALJ's explanation that state DDS physicians reached a conclusion that the plaintiff did not "medically meet or equal a listed impairment" was "perfunctory" articulation where ALJ failed to identify any specific Listing used for comparison); *cf. Reynolds v. Comm'r of Soc. Sec.*, No. 09–2060, 2011 WL 1228165, at *3-4 (6th Cir. Apr. 1, 2011)  (remanding where ALJ performed step three analysis for mental impairment but not for physical impairments, citing *Clifton* and *Burnett* with approval, and noting, "In short, the ALJ

-13-

needed to actually evaluate the evidence, compare it to Section 1.00 of the Listing, and give an explained conclusion, in order to facilitate meaningful judicial review.  Without it, it is impossible to say that the ALJ's decision at Step Three was supported by substantial evidence").

In sum, the ALJ erred at step three by not discussing whether Plaintiff met or medically equaled Listing 11.09.  Therefore, a remand is required so that the ALJ can undertake a more thorough step three analysis.

## III.   RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **GRANTED**, that Defendant's motion for summary judgment be **DENIED** and that, pursuant to sentence four of 42 U.S.C. § 405(g), this matter be **REMANDED** for a new hearing consistent with the discussion above.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

-14-

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

s/Mark A. Randon
MARK A. RANDON
UNITED STATES MAGISTRATE JUDGE

Dated: February 3, 2012

<u>Certificate of Service</u>

*I hereby certify that a copy of the foregoing document was served on the parties of record on February 3, 2012, electronically and/or by first class mail.*

s/Barbara M. Radke
Judicial Assistant to Magistrate Judge Mark Randon

-15-